**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEVEN TROY VALDEZ, an individual, | No. 08-55674 |
| Plaintiff - Appellant, | D.C. No. CV 06-448-CJC (MLG) |
| v. | |
| PHILIP NEUMAN, an individual; HILO AT CAMPBELL HALL ASSOCIATES, LLC, a New York limited liability company, | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted February 2, 2010
Pasadena, California

Before: B. FLETCHER, PREGERSON, and GRABER, Circuit Judges.

Plaintiff Steven Troy Valdez appeals the judgment against him after a bench

trial in his suit for contract rescission. We vacate in part, affirm in part, and

remand.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

## I.    Rescission

The meaning of "assume" is not ambiguous and therefore can be decided as a matter of law.  See Chwialkowski v. Sachs, 834 P.2d 405, 406 (Nev. 1992) (per curiam) (holding that summary judgment was proper because unambiguous contractual language can be construed as a matter of law).  To "assume" a debt is to agree to pay that debt when it is due, for assumption of a debt requires "becom[ing] bound as another is bound."  Black's Law Dictionary 112 (5th ed. 1979).  By interpreting the word "assume" as not creating a duty to pay, the district court committed legal error.  Likewise, it committed legal error by ruling that the contract "ma[de] no mention of . . . a time table for" payment of debts.  The unambiguous meaning of "assume" created no latitude as to when verified debts were to be paid; they were to be paid when they were due.[1]

Because of this legal error, the district court in its post-trial order made no express finding as to what the ambiguous term "verification" meant.  On the last day of testimony, however, the district court stated on the record its finding that "both parties [were] on the same page that this [debt] has to be related to the business and the beverages."  In context, this statement "provides a  sufficient

---

[1] Neuman understood this.  He stated during negotiations, "[W]e're going to treat [the verified debt] like a bill."

understanding of the issues without a remand for further findings" on this issue, Societe Generale de Banque v. Touche Ross & Co. (In re U.S. Fin. Secs. Litig.), 729 F.2d 628, 630 (9th Cir. 1984), and the district court's finding is not clearly erroneous.

Because the district court did not clearly err in finding that both Valdez and Neuman understood "verification" to require that his debts be business-related, it did not clearly err in finding no unilateral mistake. Moreover, nothing in the evidence suggests that Neuman had reason to know that Valdez expected verified debts to be paid immediately on demand, whether or not they were due immediately.

Nevertheless, the district court — again because of its legal error in interpreting the term "assume" — did not make any factual finding as to whether Valdez provided sufficient documentation to verify that his debts were business-related. Before the district court, the parties submitted voluminous evidence, in the form of correspondence, invoices and similar documents, and trial and deposition testimony, concerning Valdez's attempts to verify his debts. On appeal, Neuman argues that Valdez never provided verification that his debts were business-related. (Red Br. at 39-42.) Valdez argues that, even if the contract required verification

that the debts were business-related, he provided sufficient verification. (Gray Br. at 14-16.)

If Valdez did provide sufficient verification that certain debts were business-related, and if Neuman did not pay those debts when they were due, then Neuman breached the contract. Such a breach may constitute a failure of performance entitling Valdez to rescission of the contract. See Canepa v. Durham, 153 P.2d 899, 903 (Nev. 1944). Because the district court did not make any findings on those issues, we vacate its judgment on the question whether Valdez may rescind for a failure of performance. We remand for further findings on whether verification was sufficient, whether Neuman failed to pay any verified debts when due, and whether any resulting breach meets the standard for rescission under Nevada law. Whether the district court decides to make such findings on the current record or on a supplemented record is a matter left to its discretion.

## II.    Abandonment

The district court did not clearly err in finding that the parties did not abandon the Mesa Top agreement by mutual consent. See J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc., 89 P.3d 1009, 1019 (Nev. 2004) (per curiam) (addressing contract abandonment); Lyerla v. Watts, 482 P.2d 318, 321 (Nev. 1971) (same). For example, Neuman's express rejection of Valdez's offer to

4

rescind the contract objectively manifested a lack of consent to abandon the contract. Nor did the district court clearly err in finding that Defendants did not acquiesce in Valdez's subsequent business venture, given that Neuman testified that he was not aware of the extent of that conflicting agreement. None of Neuman's acts was inconsistent with the existence of the Mesa Top agreement because the agreement did not require the January production run (or any other), forbid Defendants from engaging in other businesses, or oblige Defendants to continue operating Mesa Top forever.

The parties shall bear their own costs on appeal.

**VACATED IN PART, AFFIRMED IN PART, AND REMANDED.**